The next case, similarly named, is the Indirect Purchaser Class v. Panasonic Corporation and Conner Erwin, the objectors. Are you sharing your time on this case? Yes, Your Honor. My name is Robert Clore. I represent the appellant, Conner Erwin. We are requesting 14 minutes total and our co-appellant, 6 minutes. And from our 14 minutes, I would like to reserve 5 minutes for rebuttal. Are you in agreement on that? Yes. Are you in agreement on the allocation of time, Counsel? No. You get 6 minutes. He gets 14 minutes. Okay? That's what I wanted to find out. Right. Hopefully I can do it. That's a lot of math, so we'll see. May it please the Court, again, my name is Robert Clore. I represent the appellant and class member, Conner Erwin. We seek to have the bid that Huggins-Berman used to become class counsel unsealed for the benefit of the class. We're also asking that the Court return the $20 to $25 million difference between the bid and the fee awarded from Rounds 1 and 2. Since the class got a 16% return on its damages, those funds will make a significant difference. I'd like to start with the sealing issue first, if I could. The Court needs to address de novo the standard for keeping bids under seal. Is it the presumptive compelling reasons standard or good cause? District Court's orders from the first two rounds don't mention the standard, nor do they mention the presumption of public access. They just say the bid will remain under seal because it would show how class counsel value the case and will disclose their work product. Well, so my understanding is that the District Court was very concerned because the case wasn't over yet. There was the first settlement, there was the second settlement, and there was concern that class counsel could be hindered in future settlement negotiations. So I think none of it was released until the third settlement. And then SER 4 was released, which does seem to be the most important part. It's a table. Well, as a class member, I have no way to know if it is the most important part or not. I've only seen that single page, but it does have it. But you have it now. Yes, correct. And am I right that you didn't have SER 4 or that the objectors didn't have SER 4 when they briefed to our court? Initially, yes. There have been three rounds of briefings, so we did not have access until the third round, which is… We have on our docket Settlement 1 and Settlement 2. Correct. So I think when you filed those briefs, you didn't have SER 4. I'm not trying to belabor the point, but I do want to make sure I understand it. That's correct. Okay, thank you. Okay. So the court did ultimately find good cause in its third order, and Huggins-Berman throughout the appeal has advocated that those reasons articulated in the court's order amount to good cause. But good cause is not enough to keep a bid to become class counsel under seal. No circuit court has ever held that it is. The analysis under this court's Chrysler opinion is the bid more than tangentially related to the merits. And the only circuit court to address that is the Third Circuit and the Syndent opinion, which we cite in our briefs. Syndent said that compelling, countervailing interests must be shown because of the importance of the bid to the administration of the case. Class members having access to the bases on which their attorneys became class counsel is crucial, given class counsel's unusual amount of control over information and the class members' limited input in class actions. So compelling interests were required but not even attempted to be shown. All we have is a discussion of how class counsel value the case, and that same sort of analysis was rejected by the Third Circuit as a compelling, countervailing interest. Now, given the presumption that we start with that there is public access, we as class members shouldn't have to articulate why we need to see the bid, but class counsel have given the class reason not to simply accept their version of what the bid says. First, they didn't tell us, they didn't tell the court or the class about the bid until after our client raised it in the objection, in all three objections. Second, they used nomenclature like fee guide to argue that the bid was just a suggestion when Judge Walker in the past has not treated bids as optional. He's held class counsel in the past to their bids. And we cited the Oracle opinion, which they didn't distinguish, and that's 852 F sub 2nd 1437, jump page 1458. Then there's also the PsyLink opinion. They also, the third thing that they didn't tell us, describe was that the bid promised not to seek expenses on top of fees. So there's, we have, you know, class counsel have demonstrated their self-interest in trying to get the largest fee possible, which of course is, you know, any counsel in their position would likely do, but it gives all the more reason for the class members to have access to it, at least in redacted form to protect work product, sorry. So this court should adhere to the compelling reason standard and vacate the court's continued ceiling of the bid. Let me briefly turn to the fees themselves. If reasonableness is the bottom line for attorney's fees under Abiscaeno, how is it ever reasonable to award a firm twice what it bid to become class counsel? We aren't asking this court to adjust or step outside its traditional fee analysis, but $42 million from the class comment fund instead of $22 million promised is on its face unreasonable. The court in round one found the bid did not apply because of, quote, imponderables like a renewed motion for class certification and appeals to this court. Those are not imponderable in this context. And more importantly, as referenced in supplemental excerpt of record 35 through 36, 40 and 53, the court had not reviewed the bid at the time it made those conclusions in the round one and round two orders. There's no way to read the transcripts from the fairness hearing, either the second or third fairness hearing, and come away with a conclusion that the court had looked at the bid. Plus, Judge Walker specifically appointed the firm based on its anticipation, or at least in part, based on its anticipation of a variety of scenarios. So to say the so-called imponderables excuse applying the bid is just inconsistent with the court, the Judge Walker's initial appointment order in the first place. Huggins-Berman says we don't contest the court's percentage of the fund analysis. That's not correct. The bid should have factored heavily in factor four, which is market rate. It didn't. Judge Walker shopped around and found the best counsel at the best price. Once he retired, why is it then reasonable to award the firm twice as much? The class members should be given the benefit of that bargain. The bid should have also weighed heavily in factor six, which is the case was taken on a contingency. Huggins-Berman wouldn't have won the bid if it had bid twice as much as it submitted to the court. Yes, all three of the firms were highly skilled, and Judge Walker initially noted that in his order of appointing counsel. There are other factors that weighed on Judge Walker's decision, but he specifically found that the fee proposal favored Huggins-Berman. So I just conclude by saying that the aggregate 23 percent from rounds one and two that was awarded may have been reasonable if there was no bid. But there was a bid. We can't pretend there was no bid, and there should have been a principled explanation for exceeding it by two times. This court should vacate the court's order denying Irwin's request to unseal the bid and also vacate the fee awards and return tens of millions to the class. And I'll pass to my co-appellant. Mr. Andrews? Good morning, Judge Farris. Good morning, Judge Bea, and good morning, Judge Christin. If it may please the court, my name is Christopher Andrews, pro se objector, appellant, non-attorney. I request two minutes for rebuttal. My job today is to basically answer any questions that you've got and clarify the issues. I can clarify the issues in both cases in about two minutes and 15 seconds. I'm going to take the second case first, case number 177436. Clarifying the major material issue in this $56 million approval will take 65 seconds. The district court, the dozens of plaintiffs and defense lawyers, ignored and failed to acknowledge the appellant's 70-page non-frivolous objection, a motion to unseal records, and a motion to appear by phone that are on the docket, with copies of those documents going to the lawyer's e-mail boxes and paper copies were sent to chambers. I quote, to survive appellate review, the district court must show it has explored comprehensively all factors and must give a reasoned response to all non-frivolous objections, end of quote. That's quoting Dennis versus Kellogg and also see Bluetooth headsets. I request by a vote of three to zero that the settlement, along with any fee, expense, and service awards be reversed because the approval was clear error and abuse of discretion. Class counsel should also be removed for the misconduct of the hearing by remaining mute. I also request the defense lawyers be removed as well, and they have their fees refunded to the defendants. Thank you. The first case, case number 17-15067. Clarifying the material issues not addressed in the $124 million approval will take just 75 seconds. The notice has an ambiguous start and end date, making the notice defective. Contrary to what I wrote in my brief and reply brief, I wrote down that the start date was the first of each month. It is blank. I've reviewed 250 settlement notices over the past seven, eight years. It's the first notice I've seen where there is no date. The month is listed along with the year but no date. So the argument is we don't know when the class started and when it ended. Missing is the number of devices involved in the average overcharge per device. There's no disclosure of the size of the class. The appellant had to come up with 122 million class member size himself, which the lawyers did not refute. There's an unknown claims take rate. There's a usurous windfall incentive awards to the named plaintiffs. The damage reports are illegally sealed, which the class has a right to see, before determining the best course of action to take, like filing a claim, opting out, or doing nothing. The claimants did not see, acknowledge, or agree to the two-page release of claims that should have been attached to the claim form. Next, the judge and defendant's employees are part of the case and can file a claim for damages which creates bad incentives. The fee awarded was a windfall. It sold the class out. There is not a single receipt for $3.7 million expense award. I went to a restaurant yesterday and got a receipt for $11.99. I request by a vote of 3-0 that the settlement, along with any fee, expense, and service awards, be reversed, because the approval was clear error and abuse of discretion, based on the broad volume of unaddressed material issues. Class counsel named plaintiffs should be removed under 23A4 and G4 for being inadequate. That's one last issue. The named plaintiffs were given incentive awards that exceeded what was in the settlement agreements. The lawyers remained mute when the judge made that mistake in the court at the fairness hearing. That should be reversed. That's a windfall for them. I have one last issue. My opponent is scheduled to give a response. I had to file an acknowledgment of hearing notice within at least 21 days before the hearing, which I did. He filed his notice eight days ago. He broke the rules. The lawyers are breaking the rules. The judge broke the rules by not following them, and that's why we're here today. I request that you penalize him for not following the rules and allow him not to speak or strike his testimony from the record. Do you have any questions? Thank you, Mr. Andrews. Thank you for your presentation. Thank you for your time. All right. You have six minutes for rebuttal. Good morning, Your Honors. May it please the Court. Kevin Green for Plaintiff Appellee and Direct Purchaser class. I'm going to respond to some of what's been argued in the opening, but first I just want to set the table on what we're addressing here today in a 10-year-old case. The most important factor governing an attorney fee award in the class action context and many others is the result obtained. That's not challenged here. There's settlements recovering to date $205 million when public prosecutors didn't recover a dime for consumers. It's all been briefed, and so I won't dwell on it, but that was not easy. That was a lot of hard work. It was international depositions. It was going through millions of documents and so on, done by my colleague, Ms. Scarlett, and many others on our team as Solete Counsel. And so I want to go to a couple of key points that the objectors are raising. And first, starting with the fee grid, this fixation on the fee application and the fee grid. That application stated that these are, and this is SCR-4, Your Honor, that this is a proposed fee structure, but more fundamentally, under Ninth Circuit law, and what I'm hearing from the objectors and I think what we're hearing is a disagreement with Ninth Circuit law and how the district court exercised its broad discretion here on fees. And starting with the fee application and the grid, it really turns on one thing, and that is, was that binding for all time, starting in 2010? And I respectfully submit that that conclusion is not supported by Ninth Circuit law. In fact, it's contrary to it. Biscano and other cases say that the court is to look to all the circumstances, and there are, of course, a host of factors the court is supposed to look at. It may look at other factors. Maybe this is simplifying the matter too much, but it seems to me that what the appellants are urging is that the attorneys here, Hagen-Berman, did a bait and switch. They came in with a proposal for $22 million, and they ended up getting $44 million because the basis of their $22 million fee was not followed by the court, and the court should have taken that into consideration, not going into a reasonable fee allocation as if they hadn't made a bid at a much lower number. Am I wrong on that? The record, the district court addressed that directly. I think contrary to what's been suggested, the district court for the Phillips settlement, and we've got five appeals here, I'll try to keep them straight, and this is at Irwin Excerpts of Record Case Number 439 involving the second settlement. At ER 23, the district court said, and this is where I think that this is an exercise of discretion that's perfectly reasonable within the bounds, the district court said, the fee I'm awarding is higher than it would have been but for the bid, but lower than I might have awarded if there had been no bid. And, in fact, reiterated that point at the SCR 30 in Case Number 065. I think the district judge had discretion to vary. I don't quarrel with that point. And Vizcano's the law in the Ninth Circuit, but this is a mega-fund settlement, and so hindsight is always 20-20, I'll grant you that, and I appreciate that this was a lot of work and a lot of risk. I appreciate that the direct class settled, folded much earlier, but I'm having trouble, so could I get to my questions here and maybe have you help me out? At the third settlement, I really looked hard at the first two settlements to see if there was indication that the district court was aware of the extent of the variance, and I couldn't find it anywhere. There's a place in the third settlement where he says on record that he was looking for it and couldn't find the bid. And, again, I am not casting aspersions here. I had a really hard time getting a hold of it. It was sealed on the record. You may well have expected and understood that the district court had access to it, but for whatever glitch or whatever reason, I can tell you that the district court had to take three different runs at getting it from the clerk's office. They were having a really hard time accessing it. Whether you're aware of that or not, I don't know. But that's the record that I've got. I can't see that he did have it at the first or the second. And so I'm concerned about the, and I want to give you a chance to respond, I'm concerned about the extent of the variance. I'm concerned about, I can't find anywhere where there was a statement that in the original bid, Judge Walker clearly understood that the class was not going to be charged for expenses, and they were, and I can't see where the district court acknowledged that. And there's a place where, in response, I don't think the SCR-4 was mentioned. I don't think the original bid was mentioned in the original fee proposal, a fee request. Objectors mentioned it. And then someone from your side came back and said that the fee would have been 12% to 13%. I can't get 12% to 13% looking at SCR-4. So those are my three primary questions for you. Okay. To try to address those in sequence, if I can. The district court, well, first on the expenses question, SCR-4 says very clearly that the class would not be charged for costs. It does not mention expenses. That's not on that page, and that's why those were separate. And so there's no bait and switch or misrepresentation with regard to that. Is there any place in the record where the district court recognizes this? The district court, yes. And this is a key point. I'm glad you've asked me. The district court, in Mr. Irwin's supplemental excerpts of record, the ones that were most recently submitted, SCR-30 found that, okay, I've looked at the application, I've considered the bid, apart from how closely I might have considered it previously, and this fee award, not on review now, granted this is a third settlement, this fee award and the prior awards under all the circumstances are reasonable. It does not change my opinion. Now, is it too late for him to make that finding? And my answer to that is, under Ninth Circuit law, no, because all that's required to give an explanation for a fee award is a reasoned explanation in the record, and that's an online DVD in Churchill Village, and we have that before this court right now. So, I mean, to the extent that was a mistake or an error, I think it was fixed. In that order, at SCR-30, where the court says very clearly, under all the circumstances, I still find these fees to be reasonable. And, again, under Vizcano, the court is to consider all the circumstances. And what it said was, I'm sorry. Forgive me for interrupting, but that does get back to Judge Bea's point, and I'm not sure you really answered it. Vizcano's the law, and Vizcano says all the circumstances. In this particular circumstance, there was a bid. And I don't see that acknowledged here. How was that taken into account? Well, Your Honor, I have the pages here, the fee orders, and this is where the judge said, and I've already read the record sites in, but said that, and, again, I think this is the sound exercise of discretion. Judge Seaborg said that the fee I'm awarding is higher than it would have been but for the bid, but lower than it would have been if there had been no bid. And when the court is looking at all the circumstances governing a fee award. What did Judge Seaborg say, just what you said? He said that at Mr. Irwin's supplemental excerpts of record. At the third settlement. Correct. SCR-30. I've got it. Okay. And so he did consider that as a factor. And so in light of Ninth Circuit law that all the circumstances are considered in arriving at a reasonable fee, what I'm hearing is disagreement on how much weight he should have given it. And that's within. Well, wait a minute. You also represented that he had considered it, and I think you may have reasonably understood that he considered it, but I'm not sure he had it or could find it. And I don't think anybody here today knows that, but that is a problem that I've got. And then there's the representation repeatedly. If you could just walk me through it. Before our court, that had the fee bid been followed, it would have been between 12% and 13%, and I can't get there. Could you help me figure out how you calculated that? Under the fee grid. Let me get that here. First, I want to finish up on the point that we just talked about because it's really important. Okay. Now, and this is SCR 30, Judge Beha, that I just read to you. Now, the court has looked to the original proposal as supporting the fact that the fees awarded each round of the settlement have been substantially less. It would have been justified absent that proposal, although admittedly substantially higher than had the proposal been strictly followed. So I think it's clear from that, in all inferences drawn in favor of the order on review, that Judge Seaborg had that bid. He considered it. He made a determination that under all the circumstances, the fees are reasonable. And, again, he landed somewhere in the middle of saying, okay, I could have gone higher than, say, a 1.53 multiplier, a lot higher under Vizcano. It could have been in the threes, but I'm going to go a lot lower. And, moreover, the percentage of the fund requested reflected that. The first settlement was 25 percent. That's the Ninth Circuit benchmark. The second settlement is 21. The third settlement is 20. You repeatedly refer to a benchmark, Counsel, but this is a mega-settlement, and we have certainly signaled that in really large recovery that that should be taken into account. So I think it's less cut and dry than you're representing. Can you help me out with this math, the 12 to 13 percent estimate that you've given us here? Sure, Your Honor, and this is at SCR 4, and it concerns the amount recovered from each defendant of 50 to 75 million. And there's after a motion to dismiss through adjudication of class certification and after adjudication of summary judgment. And then the third settlement is after adjudication of summary judgment. The representation in our briefing that I'm trying to focus in on is that first settlement, the 124.5 million, that you would have been entitled to between 12 and 13 percent. Right, right. And that's the stage of the case there is after a motion to dismiss through adjudication of class certification. And that's where the case was. And the percentages differ because different amounts were recovered from different defendants. Well, but look on the far left-hand column. It says the first 5 million. I mean, I understood this to be a gradual, I mean, a gradation. And so what you're saying is that rather than looking at 124.5, I'm not trying to put words in your mouth, but I think the answer is that you got to between 12 and 13 percent by taking each of the three components of the first settlement separately. Is that right? Yes. And that's because that page, SCR-4, says recovered from each defendant. So why isn't it? Nothing on this grid tells me has a range. You said between 12 and 13 percent. Well, the range reflects the amount recovered. So as the amount recovered from each defendant goes up, the percentage goes down. Yes, counsel, I know that. Is there any further explanation you can give me about the far left-hand column about why you treated these individually as opposed to cumulatively? I'm making my best effort to answer your question. I appreciate that. And, again, just above the graph there, it says amounts recovered from each defendant. And that was, again, the proposal that Judge Walker didn't say was binding, didn't intend to be binding, and would have shackled Judge Seaborg's discretion at the fee stage much later. Well, what do I do with Judge Walker's statement at ER-547 that attorneys' fees and expenses to HB will be awarded consistent with the terms set out in the firm's proposal dated May 13, 2010? That is what Judge Walker said. Is your response that he didn't mean it or it wasn't binding on Judge Seaborg? Or that Judge – I'm not going to flip when I say didn't mean it, but it seems to me like an unequivocal statement. Are you relying on your position that Judge Seaborg had discretion to vary from it, or is it your position that Judge Walker didn't make an unequivocal statement? I don't quarrel at all with what Judge Walker said, but I think at the fee stage under Biscano and dating back to Washington public power that an attorney's fee award is assessed based on all the circumstances. And the bid is one circumstance. That's the focus of this appeal. I understand that. That's the problem. Right. And then one of the circumstances, and then I'll stop. But there's another circumstance that the judge called out, and in your briefing you've continued, which is that the DOJ investigation, in your view, increased the litigation risk for a plaintiff's counsel, for class counsel. And I frankly find that mystifying. Can you explain that to me? The defendants tried to use that in that the DOJ didn't issue a broader range of indictments than it did. That the investigation was the conclusion. As though they had been vindicated or something? Was that the idea that you. That's the essence of it, Your Honor. Okay. Yes. All right. But you did make use of some of the, I think there was, I think it came to the Ninth Circuit, there was a skirmish over getting access to some of the discovery from the criminal, from DOJ. Isn't that right? There was an appeal on that. That's correct. But Judge Seaborg made a determination, and I assume it's reviewed for clear error, that this case was developed way beyond what the DOJ did. And I have the citation for that, which I can give it to her. I think that's apparent, and I don't quarrel with that. Again, I know hindsight is 20-20. I'm just trying to get my arms around this as a particular circumstance for us, because there's a fiduciary obligation. We're trying to be careful. And then it rolled out in thirds, and that's why I'm trying to make sure that the district court had what it needed to recognize the extent of the variance. Is there anything else you want to tell me about that? That's the rub for me. I'm going to try to repeat our position on that just to make it very, very clear, and that is that it's quite evident from the supplemental excerpts of record and what I just read, and that's at SCR 30, that Judge Seaborg had that information, apart from what he had said at a hearing where he tended to ruminate and have discussions with counsel, that he had that information. When? He had the information. I'm sorry, there's a siren going on outside. He had the information, meaning SCR 4, the bid? Yes. And he had it when? He had it certainly at the time of the settlement approval in the third settlement. It's not before the court now. And that's the supplemental excerpts of record that Mr. Irwin submitted. And, again, that's where he says, I think he makes a finding that cleans all this up to the extent he needed to. I appreciate that. But when you say that he had it and your briefing as to the first settlement and the second settlement, your briefing tells us repeatedly that he had it and considered it. I can't find that anywhere. And so I don't know if you included that in your briefing because you assumed it since it had been filed, never mind that there was problems accessing it on our end. I don't know how you could have known that. But is there another place in the record that supports the statement that he considered it? Your Honor, I would respectfully invite the Court's attention to the second settlement, the Phillips settlement. Okay. And that's at Irwin ER, page 23 in appeal number 439, where the court is talking about the bid. And so a reasonable reading of that order, certainly construed favorably to the judgment under appellate review standards, is that he knew about it, that he had some awareness of it. Now, what exactly he knew, I'm not sure. But given that the court considers all of the circumstances, all of the circumstances, the risk, the complexity, I mean, the fact that my firm fronted $30 million over 10 years, there are a handful of firms in the country that would do that to recover what it did for the class, suggests that he was aware of that. So I think that's something of a – it could have been a slip, but the fact that he talks about it suggests that, of course, he knew about it. All right, I want to touch on just the benchmark briefly. My time is about to expire here. In the opening brief from Mr. Irwin in case number 065, the lower number case, at page 19, AOB at 19, Mr. Irwin makes very clear that he's seeking to revisit. The term is viscano should be revisited. And, of course, respectfully, a three-judge panel can't do that. It's an argument against Ninth Circuit law. Now, in short, discretion means, as applied to this case, in thinking of cases like U.S. v. Hankson, what does discretion mean? It's contextual. It means the judge had more than one choice. And I think the judge here acted within the permissible range, looking at all relevant circumstances bearing on the fee award on this record and these facts. Thank you. Thank you. Thank you. I just have a few response points and hopefully give time back. The first point is the court's order from the third round does not cure the omissions. Why not? Well, largely, there's nothing new, other than the court says it has now reviewed the bid. It just articulates that it could have awarded more had there not been a bid, but there was a bid. So that's really not an explanation. Otherwise, I think it's S.E.R. 29 and 30, it simply adopts its prior orders. It adopts the explanation in its prior orders, which, again, were made when the court had not reviewed the bids. In your view, does it make any difference that at the time the bids were made and considered, nobody knew what was going to transpire? Nobody knew it would take 10 years. Nobody knew it would take 30 million advance to bring it to a conclusion. Somebody had to advance the money to bring it to a conclusion. I agree with that. And at the end, all the facts now are known. In other words, the court knows now what effort had to be put forward in order to make the recovery that I think everybody is satisfied with. Am I wrong on that? I think that's a fair assessment that it's impossible to- Nobody knew at the beginning. Nobody knew. And then at the end, the court did know, and the court then could consider. Isn't that right? That is true, but these are highly skilled attorneys, and they're all vying for class counsel status. And so they anticipate those scenarios, and that's one of the reasons that Judge Walker specifically appointed Huggins-Berman. I agree. I agree. I agree. I agree. The record makes it clear that what you say is true. He said, in fact, everybody's-well, I didn't say everybody's qualified. I'm going to-but this bid has to do with my decision as to who to award it. I don't think there's any question about that. The problem, and the only problem, at least so far as a third of the court is concerned, only problem is nobody knew at that time what would have to be done in order to bring this matter to a successful conclusion. And that was not known until it was brought to a successful conclusion. So it seems to me your burden is to show to us why the court didn't consider everything it needed to consider. Don't you think that's so? Well, if you could abandon the bid on the idea that you could have never anticipated that- Well, they wouldn't have got it without the bid. I agree with you on that. They wouldn't have. It was their bid that got it for them. But at that time they made the bid, nobody knew what road they'd have to travel to get a satisfactory result. So in your view, the bid bound them. And in the court's view, at least as I understand this record, in the court's view, the bid is something to consider, and the court said, I do consider it. I would have given them more, but I'll give them a little less than I would have given them. I don't know if it's a little less, but I would give them less than I would have given them had they not- had there not been the bid. Now, what more consideration, in your view, should there have been? Well, I think, number one, there needed to be an articulation of how the court considered the bid in the context of the Vizcaíno factors. How did it affect market rate? To not mention the bid and market rate when that is the market rate. By definition, what the attorneys bid to obtain class counsel status is market rate. So to not mention it at all in that factor, in my view, is fatal. And then additionally, to skim over it in the accepting fees on a contingency basis, the basis was a 12% fee, not a 23% fee or a 25% fee. Plus expenses. Expenses. That's the one thing that you can argue, I think, because it was pretty clear that on this arrangement, you were not to pay the expenses. You were not to pay any expenses. I agree, Your Honor. And that's- we did not conflate costs with expenses. The district court's order is clearly talking about out-of-pocket- well, I just did right there, but out-of-pocket expenses, not costs. I've exceeded my time, so thank you, Your Honors. I brought up the bid in my objection appeal brief and reply brief, but that was not my focus. My focus is on the material issues that are wrong with the settlements. I haven't heard any questions by the court. So here's my closing. The material issues in the deals are not harmless. Harmless errors are those that do not affect the substantial rights of the parties. 28 U.S.C. 2111. See also Federal Rules of Civil Procedure 61. Regarding the mega-fund amount that was awarded, I believe that the amount that was awarded would have been substantially less had the whole $124 million settlement been made in one lump sum. What happened is they submitted it and got paid in increments. And I think what they really owe is probably closer to 16, 18%. The amount of work involved in settling a $60 million settlement is just the same amount of work as it would be for $125, $250, $300 million. You get efficiencies. I don't think the efficiencies were taken into account. I would like to thank the personnel in the Ninth Circuit and the panel here for allowing me to be here today. Thank you. Thank you, Mr. Manders. The case of the indirect purchaser class versus Connor Irwin is submitted for decision. And the next case, and the last one on the calendar, is Klamath-Siskiyou Wildland Center versus Patricia Grantham. Before we start this presentation, the court is going to take a brief 10-minute break. Thank you.
judges: Farris, Bea, Christen